# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

LAUSTEVEION JOHNSON,

    Plaintiff

v.

GENTRY, et al.,

    Defendants

Case No.: 2:17-cv-01671-APG-EJY

**Order Granting in Part the Defendants' Motion for Summary Judgment, Dismissing Unserved Defendants, and Denying Plaintiff's Motion for Oral Argument**

[ECF Nos. 61, 72]

    Plaintiff Lausteveion Johnson sues multiple defendants for events that took place while he was incarcerated at Southern Desert Correctional Center (SDCC). After screening, count one and portions of count two remained pending.[1] By later order, I allowed Johnson to amend to include an excessive force claim against Willis for allegedly slamming Johnson's head in a gate. ECF No. 48.

    Defendants Regina Barrett, Frank Dreesen, James Dzurenda, Timothy Knatz, Joseph Lewis, David Willis, and Jo Gentry move for summary judgment on all claims against them. Johnson opposes. The parties are familiar with the facts, so I repeat them here only where necessary to resolve the summary judgment motion. I grant the defendants' motion in part. I deny Johnson's motion for oral argument. *See* LR 78-1 ("All motions may be considered and decided with or without a hearing."). Finally, I dismiss without prejudice Johnson's claims against the Doe defendants and defendant Adam for failure to identify and serve those defendants.

---

[1] Johnson makes several arguments regarding defendant Willis's alleged religious comments to him, as well as the fact that he was denied Vaseline while in disciplinary segregation. Those claims are not part of the case. *See* ECF Nos. 4, 48.

1  **I.  ANALYSIS**

2        Summary judgment is appropriate if the movant shows "there is no genuine dispute as to

3  any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4  56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."

5  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence

6  is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

7        The party seeking summary judgment bears the initial burden of informing the court of

8  the basis for its motion and identifying those portions of the record that demonstrate the absence

9  of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

10  burden then shifts to the non-moving party to set forth specific facts demonstrating there is a

11  genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th

12  Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a

13  genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and

14  reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of*

15  *Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

16        **A.  First Amendment Retaliation**

17        In count one, Johnson alleges a claim for First Amendment retaliation against Willis,

18  Lewis, Gentry, Dzurenda, Knatz, Barrett, and Dreesen[2] based on adverse actions they took in

19  response to him filing grievances.  These defendants argue there is no evidence they personally

20  participated in any violation.  They also contend there is no truth to the allegation that they tried

21

22  _____

23  [2] Johnson also asserted this claim against Adams, John Doe doctor, John Doe nurse, and mental
health staffer Jane Doe.  Johnson has never successfully served Adams or identified the Doe
defendants.  I therefore do not discuss Johnson's allegations against them in the various
remaining counts.

to force Johnson to live in a unit with other inmates who vowed to murder him.  Rather, they contend that his time in disciplinary segregation was up, so he was going to move to another unit, and his only complaint at the time related to his property.  He later stated he had enemies in the other unit, and he was not subsequently moved to that unit.  Finally, Barrett denies that she threatened to write so many notices of charges against Johnson that he would spend the rest of his life in the hole.

Johnson responds that Willis and Lewis retaliated against him for filing grievances against them and against their unit.  He contends that he sent grievances to Gentry and Dreesen asking them to stop Willis from retaliating, but they refused to intervene and instead supported Willis's actions.  He also contends that he states under penalty of perjury that Barrett threatened him, so there is an issue of fact for the jury to resolve.

Prisoners have a First Amendment right to file prison grievances and civil lawsuits and to be free from retaliation for doing so. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  A First Amendment retaliation claim has five elements.  First, the plaintiff must show he engaged in activity protected by the First Amendment. *Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012).  Filing an inmate grievance is a protected activity. *Id.*

Second, the plaintiff must show the defendant took adverse action against him. *Id.* "The adverse action need not be an independent constitutional violation," and the "mere threat of harm" may suffice. *Id.* (emphasis and quotation omitted).

"Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct." *Id.*  A close proximity in time between the protected activity and the adverse action "can properly be considered as circumstantial evidence of retaliatory intent." *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

3

Fourth, the plaintiff must show that the defendant's acts "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quotation omitted). The plaintiff does not have to show that the defendant actually suppressed his speech. *Rhodes*, 408 F.3d at 568. Evidence "that his First Amendment rights were chilled, though not necessarily silenced, is enough . . . ." *Id.* at 569. However, the plaintiff must show the harm he suffered was "more than minimal." *Watison*, 668 F.3d at 1116 (quotation omitted).

Finally, the plaintiff must show that the defendant's retaliatory act "did not advance legitimate goals of the correctional institution." *Id.* (quotation omitted). To establish this element, the plaintiff must show not only that the defendant acted with a retaliatory motive, but also that the defendant's actions "were arbitrary and capricious," or "were unnecessary to the maintenance of order in the institution." *Id.* (quotation omitted).

### 1. Head Slamming Incident

Viewing the facts in the light most favorable to Johnson, genuine disputes remain regarding whether Willis slammed Johnson's head in the gate in retaliation for filing grievances. Johnson engaged in protected activity by filing grievances against Willis and his unit in the month before the January 26 head slamming incident. ECF Nos. 69-1 at 3, 5, 90; 61-2 at 23-25, 81, 86; 69-3 at 121. He has presented evidence that Willis took adverse action against him by intentionally slamming him with the B wing gate multiple times. Although Willis disputes this, I must view the evidence in Johnson's favor. Johnson states under oath that is what happened, and he provides the affidavits of two other inmates, signed under penalty of perjury, that they saw Willis repeatedly slam the gate on Johnson. ECF No. 69-3 at 119-21. Johnson has presented evidence of a causal connection due to the temporal proximity between his January grievances

and the gate incident, and because he states under oath that Willis told him that the slamming was in retaliation for the grievances. *Id.* at 121-23.

A reasonable jury could conclude that an unprovoked physical attack would chill or silence a person of ordinary firmness from future First Amendment activities. Finally, a reasonable jury could find that slamming Johnson's head in the gate multiple times did not advance legitimate goals of the correctional institution. I therefore deny the defendants' motion as to this portion of Johnson's First Amendment retaliation claim.

Willis did not move for summary judgment on the excessive force claim, instead apparently believing that the head slamming incident was only part of a First Amendment retaliation claim. But my order allowing amendment characterized the claim as one for excessive force. ECF No. 48 at 1. That claim therefore also remains pending against Willis.

### 2. Finding Him Guilty and Sentencing to the Hole

#### a. Willis

Even viewing the facts in the light most favorable to Johnson, this portion of his claim fails against Willis. Willis was not the hearing officer, did not find Johnson guilty of the notice of charges, and did not sentence him to the hole. Willis therefore did not personally participate in these alleged retaliatory acts. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (stating that "for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation").

#### b. Lewis

Lewis was the hearing officer who found Johnson guilty and sentenced him to disciplinary segregation (or the hole, as Johnson characterizes it). ECF No. 61-13 at 3. Lewis held hearings on March 8 and 9, 2017. ECF Nos. 61-6; 69-1 at 50; 69-3 at 56, 112. Johnson

1   engaged in protected activity by filing grievances against Lewis before the hearing. ECF Nos.

2   61-13 at 3; 69-1 at 93, 118.  He has presented evidence that Lewis took adverse action against

3   him by finding him guilty of the charges and sentencing him to disciplinary segregation. ECF

4   No. 69-3 at 112.  A reasonable jury could conclude that a sentence in disciplinary segregation

5   would chill or silence a person of ordinary firmness from future First Amendment activities.

6           However, other than proximity in time between the grievances and the guilty finding,

7   Johnson points to no facts that would allow a reasonable jury to conclude that Lewis retaliated

8   against him for filing grievances.  He presents no evidence whether or when Lewis learned of the

9   grievances against him, so it is unclear whether Lewis even knew about them prior to the

10  hearings.  Johnson presents no evidence that Lewis made comments suggesting that he was

11  acting with a retaliatory motive.  To the contrary, Johnson contends that Lewis found him guilty

12  because Lewis thought Willis was a "good guy," so Johnson must have done something wrong to

13  receive a notice of charges from Willis. ECF No. 69-1 at 28.  Under these facts, proximity alone

14  is insufficient to raise a genuine dispute on a causal connection.

15          Moreover, Johnson has presented no evidence that the guilty finding and sentence did not

16  advance legitimate goals of the correctional institution.  There is no evidence that Lewis's

17  finding of guilt and sentencing were arbitrary or capricious or unnecessary to maintaining order.

18  Willis reported that Johnson refused to follow unit rules to wait to be motioned or verbally called

19  through the gate before trying to move through the gate. ECF No. 61-6.  Ensuring inmates follow

20  unit rules is not arbitrary or capricious or unnecessary to maintaining order.  To the extent

21  Johnson contends Lewis should not have believed Willis, he presents no evidence that Lewis's

22  credibility finding was arbitrary or capricious.  I therefore grant the defendants' motion for

23  summary judgment on Johnson's First Amendment retaliation claim against Lewis.

1          c.  Gentry

2          Gentry denies that she was the subject of the grievances Johnson identified in his

3    complaint as being the impetus for the guilty finding and sentence. ECF No. 61-12 at 3.  She

4    admits that she responded to many of Johnson's grievances, but she states that she was not the

5    subject of any of those grievances. *Id.*  In April, May, and June 2017, Gentry denied some of

6    Johnson's disciplinary appeals and first level grievances. ECF No. 69-1 at 12, 14, 26, 36, 43, 52,

7    72.

8          Johnson engaged in protected activity when he filed a grievance against Gentry on

9    January 3, 2017. ECF No. 69-1 at 85.  However, he presents no evidence of a causal connection

10   between that grievance and Gentry's handling of his grievances and disciplinary appeals months

11   later.  He also presents no evidence that Gentry made any comments suggesting a retaliatory

12   motive.  Finally, he presents no evidence that any of Gentry's decisions were arbitrary and

13   capricious or unnecessary to maintain order.  Johnson's disagreement with Gentry's decisions

14   does not raise a genuine dispute that she retaliated against Johnson for filing a single grievance

15   against her months earlier.  I therefore grant the defendants' motion for summary judgment on

16   Johnson's First Amendment retaliation claim against Gentry.

17         d.  Dzurenda

18         Dzurenda was not the hearing officer, did not find Johnson guilty, and did not sentence

19   him.  Dzurenda denies that he responded to any grievances that Johnson submitted between

20   December 7, 2016 and July 6, 2017. ECF No. 61-10 at 3.  Johnson presents no evidence to the

21   contrary.  Because Dzurenda did not personally participate in any alleged First Amendment

22   retaliation violation, I grant the defendants' motion for summary judgment on this claim against

23   Dzurenda.

### 3.  Transfer

In May 2017, non-party correctional officer Harris advised Johnson that he would be moving from Unit 8 to Unit 7. ECF No. 61-4 at 8.  Johnson stated he would not move until he got his property. *Id.*  Harris asked Johnson if he was refusing to house and Johnson stated he was. *Id.*  Harris thus issued a notice of charges. *Id.*

Johnson filed an emergency grievance in which he complained about his property but did not mention any threats to him in Unit 7. ECF No. 61-5.  Knatz denied the grievance, stating that Johnson would receive a notice of charges for his refusal to house and that "[p]roperty day is Monday." ECF No. 61-14 at 3.  Knatz denies that he or anyone else filed the notice of charges against Johnson in retaliation for the grievance. *Id.*  Rather, he states that "prisoners are not permitted to choose where they are housed and are properly charged with a disciplinary violation if they refuse to move to their assigned cell." *Id.* at 4.  Knatz states that he does not recall Johnson telling him that Johnson had enemies in Unit 7. *Id.*

Barrett denies that she forced Johnson to be housed in a unit where individuals had vowed to murder him. ECF No. 61-15 at 3.  She states that on May 30, she spoke with Johnson about his refusal to move. *Id.*  Johnson told her he had enemies in Unit 7. *Id.*  On June 30, Barrett entered a case note in the Nevada Offender Tracking Information System (NOTIS) indicating that Johnson was not refusing to move, but that he had enemies on the yard. *Id.*; ECF No. 61-4 at 2.  Johnson was never moved to Unit 7 at SDCC. ECF No. 61-1 at 4.  Instead, he was moved to High Desert State Prison. *Id.*  Dreesen and Gentry also deny that they tried to force Johnson to be housed in a unit with other inmates who threatened to murder Johnson. ECF Nos. 61-11; 61-12.

This claim fails as to all defendants because even viewing the evidence in the light most favorable to Johnson, he has not presented evidence of a causal connection between his

grievances and the decision to transfer him to Unit 7. Johnson does not present any evidence that at the time he refused to transfer, he mentioned anything about facing threats in Unit 7. He thus also has failed to show the notice of charges for his refusal to house did not advance legitimate goals of the correctional institution. Given Johnson's failure to raise the issue of threats with Knatz at the time, no reasonable jury could conclude that Knatz's decision to charge Johnson for refusing to house as ordered was either arbitrary and capricious or unnecessary to maintain order. Further, the evidence shows that once Johnson advised prison personnel of the threats, he was not transferred to Unit 7. I therefore grant the defendants' motion as to this portion of Johnson's First Amendment retaliation claim.

### 4. Barrett's Comment

Johnson alleged that twice in May 2017, Barrett retaliated against him for a May 23 emergency grievance by threatening to write so many notices of charges against him that he would never leave the hole for the rest of his life. In his response to the motion for summary judgment, he does not point to where in the record he made a May 23 grievance against Barrett. Instead, he states that on May 25, Barrett told him she would write a notice of charges against him for the emergency grievance he filed against her on May 28. ECF No. 69-3 at 123. It is impossible for Barrett to have threatened Johnson on May 25 in retaliation for an action he did not take until three days later. He does not identify where in the record I can find any May grievance against Barrett. He cites generally to exhibit 1, but that is over 100 pages of jumbled, unorganized, and out-of-order grievances and disciplinary appeals.

Nevertheless, Johnson states under oath that he filed an emergency grievance against Barrett and that she subsequently threatened him. *Id.* He states under penalty of perjury that on May 28 and 30, 2017, Barrett threatened to write him up on so many notices of charges that he

would never leave the hole again and that she made the threat in response to his grievances. *Id.* at

123, 126.  Although Barrett denies she made those comments, I must view the facts in Johnson's

favor.  Johnson has presented evidence of a causal connection due both to the timing of the

activity and because he states under oath that Barrett told him that she would file charges against

him in retaliation for him filing grievances. *See id.*  Barrett filed a notice of charges against

Johnson in early June 2017. *Id.* at 72.  A reasonable jury could conclude that a threat to file so

many charges against an inmate that he would remain in disciplinary segregation for the rest of

his life would chill or silence a person of ordinary firmness from future First Amendment

activities.  Finally, a reasonable jury could find that threatening Johnson did not advance

legitimate goals of the correctional institution.  I therefore deny the defendants' motion as to this

portion of Johnson's First Amendment retaliation claim.

### B.  Deliberate Indifference to Medical Needs

In a portion of count two, Johnson alleges a claim for Eighth Amendment deliberate

indifference against Dzurenda and Gentry based on their refusal to allow him treatment even

though they knew that he was suffering a mental health episode while in solitary confinement.

Dzurenda and Gentry argue that there is no evidence Johnson had a mental illness or that they

knew about it if it existed.  Johnson responds that his mental health issues have been documented

in his medical records at the Nevada Department of Corrections (NDOC) and he advised these

defendants of his problems through grievances, but they refused to act.

"To prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff

must show deliberate indifference to his serious medical needs." *Colwell v. Bannister*, 763 F.3d

1060, 1066 (9th Cir. 2014) (quotation omitted).  A serious medical need "exists if failure to treat

the injury or condition could result in further significant injury or cause the unnecessary and wanton infliction of pain." *Id.* (quotation omitted).

An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health and safety." *Id.* (quotation omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (quotation omitted). A prisoner may establish that officials were aware of a substantial risk of serious harm by showing that "the risk posed by the deprivation is obvious." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). He may establish the officials acted with the required culpable mental state if he shows that "the prison officials had no reasonable justification for the deprivation, in spite of that risk." *Id.* (quotation omitted). A prison official may be deliberately indifferent to a prisoner's serious medical need if he or she denies, delays, or intentionally interferes with medical treatment. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

### 1. Dzurenda

On March 5 or 8, 2017 (the copy Johnson provides is not clear), Johnson submitted an inmate request form to Dzurenda in which Johnson stated that SDCC was trying to make him commit suicide, he has PTSD, and he requested to have his disciplinary segregation time cut in half and to be issued his television for mental health reasons. ECF Nos. 69-1 at 146-47; 69-2 at 2. Johnson stated that his mental health was not considered before he was sentenced to disciplinary segregation and that the "last time [he] did dis seg time without [his] tv in 2012 [he] attempted suicide due to [his] PTSD symptoms becoming exacerbated." ECF No. 69-1 at 146-47.

There is no evidence Dzurenda investigated whether Johnson had mental health issues or a prior suicide attempt while in disciplinary segregation. There is no evidence Dzurenda

1    responded in any way to Johnson's request form.  Dzurenda denies that he was aware Johnson

2    had mental health issues or attempted suicide. ECF No. 61-10 at 3.  He also denies that he ever

3    withheld mental health treatment to Johnson or kept Johnson in solitary confinement knowing of

4    any mental health issues.  *Id.*  But Dzurenda does not dispute that Johnson sent the inmate request

5    form and he does not explain his response (or lack thereof) to it.  Viewing the facts in the light

6    most favorable to Johnson, a reasonable jury could find that Dzurenda was aware of Johnson's

7    serious mental health need and was deliberately indifferent to it because despite learning of a

8    claimed prior suicide attempt while in disciplinary segregation, he took no action to investigate

9    or respond to Johnson's request to mitigate the effect the disciplinary segregation would have on

10   Johnson's mental health.[3]  I therefore deny the defendants' motion for summary judgment on

11   Johnson's deliberate indifference claim against Dzurenda.

12           2.  Gentry

13           On April 29, 2017, Johnson sent an inmate request form to Gentry stating that he is

14   mentally ill and has been diagnosed with PTSD. ECF No. 69-2 at 7.  He stated that he was put

15   into disciplinary segregation for 60 days without his "appliances," and that this was

16   "exacerbating [his] mental health causing [him] to have an extreme psychological episode." *Id.*

17   He requested Gentry to allow him to meet with a mental health staff member and to discharge

18   him from the hole. *Id.*  Gentry responded on May 11 that a referral would be sent to the mental

19

20

---

21   [3] Dzurenda and Gentry appear to dispute Johnson even has mental health issues or that he ever
     attempted suicide.  Johnson states under oath that he has PTSD, hallucinations, and attempted
22   suicide. ECF Nos. 69-1 at 147; 69-3 at 123, 125.  Whether Johnson had serious mental illness or
     attempted suicide is an issue for the jury to resolve. *Fuller v. Idaho Dep't of Corr.*, 865 F.3d
23   1154, 1165 (9th Cir. 2017) ("Credibility determinations, the weighing of the evidence, and the
     drawing of legitimate inferences from the facts are jury functions, not those of a judge."
     (quotation omitted)).

1 health staff. *Id.*  The defendants do not point to evidence that this was done or that Johnson was
2 seen by a mental health professional based on a May 11 referral.

3       On May 3, 2017, Johnson sent another inmate request form to Gentry requesting that his
4 disciplinary segregation be reduced from 30 to 15 days. *Id.* at 5.  He stated that he had "multiple
5 sever[e] mental health illnesses including 'PTSD.'" *Id.*  Gentry responded on May 11 by denying
6 his request and stated that Johnson "may resubmit after completing 30 days" of disciplinary
7 segregation. *Id.*

8       On May 5, Dreesen received a request from Johnson claiming he has PTSD. ECF No. 61-
9 11.  Although Dreesen was unaware of that diagnosis being verified by a mental health
10 professional, he nevertheless contacted Johnson's caseworker, Barrett, who had a mental health
11 worker see Johnson that same day. *Id.*; ECF No. 61-15 at 3.  The parties present no evidence that
12 Gentry was aware that Johnson was seen by a mental health professional on May 5.  And there is
13 no evidence as to what that mental health professional opined about Johnson's mental condition
14 or whether that information was conveyed to Gentry.

15       Gentry states that she was "aware that Johnson had been seen by the mental health staff,"
16 but she does not state when she became aware of it or when, to her knowledge, Johnson was seen
17 by the staff. ECF No. 61-12 at 3.  She also states she was not aware that a mental health provider
18 had diagnosed Johnson with a mental health issue or that Johnson had attempted suicide. *Id.*  She
19 denies that she ever refused Johnson any mental health treatment or kept him in solitary
20 confinement knowing of a mental health issue. *Id.*

21       Although a closer call, a genuine dispute remains regarding whether Gentry was
22 deliberately indifferent to Johnson's serious mental health need.  Johnson advised Gentry of his
23 mental issues and that disciplinary segregation was exacerbating his condition, causing him to

1  experience an extreme psychological episode.  There is no evidence Gentry investigated whether

2  Johnson had a mental health condition or requested he be seen by mental health staff before she

3  denied his two requests.  Although she stated she would refer Johnson to the mental health staff,

4  no evidence is presented to show she actually did so.  And there is no evidence that before she

5  denied his requests, she was aware that he was seen by mental health staff based on Dreesen's

6  request or what the outcome of that visit was.  Viewing the facts in the light most favorable to

7  Johnson, a reasonable jury could find that Gentry was aware of Johnson's serious mental health

8  need and was deliberately indifferent to it because, despite learning of a claimed prior suicide

9  attempt while Johnson was in disciplinary segregation, she took no action to investigate or

10  respond to Johnson's request to mitigate the effect the disciplinary segregation would have on his

11  mental health.  I therefore deny the defendants' motion for summary judgment on Johnson's

12  deliberate indifference claim against Gentry.

13         **C.  Conditions of Confinement**

14        A portion of count two asserts a conditions of confinement claim against Willis, Gentry,

15  Dreesen, Lewis, and Dzurenda based on allegations that despite these defendants knowing he

16  had mental illness and had attempted suicide the last time he was in solitary confinement, they

17  again placed him in solitary confinement without mental stimulation from his television or radio.

18  Willis, Gentry, Dreesen, Lewis and Dzurenda dispute that Johnson had a mental illness or that

19  any of them knew about it or about a suicide attempt.  They thus contend there is no evidence to

20  support Johnson's allegation that they were deliberately indifferent to his conditions of

21  confinement in solitary confinement without mental stimulation.  Johnson responds that his

22  mental health conditions are documented in NDOC medical files and he advised the defendants

23  of his situation through grievances, but they failed to act.

"The Eighth Amendment's prohibition against cruel and unusual punishment imposes duties on prison officials to 'provide humane conditions of confinement.'" *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Consequently, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (quotation omitted).  To state a conditions of confinement claim, the inmate first "must objectively show that he was deprived of something sufficiently serious." *Foster*, 554 F.3d at 812 (quotation omitted).  "A deprivation is sufficiently serious when the prison official's act or omission results in the denial of the minimal civilized measure of life's necessities." *Id.* (quotation omitted).  Second, the inmate must show "that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Id.*

### 1.  Dzurenda and Gentry

I deny the defendants' motion on this claim as to Dzurenda and Gentry for the same reasons I denied the motion with respect to Johnson's deliberate indifference to medical needs claim.

### 2.  Willis

Johnson does not point to evidence that Willis knew of Johnson's mental health issues or suicide attempt.  Moreover, Willis did not sentence Johnson to disciplinary segregation or respond to any grievances requesting a change in Johnson's conditions of confinement while in disciplinary segregation.  I therefore grant the defendants' motion on Johnson's conditions of confinement claim against Willis.

/ / / /

/ / / /

1                  3.  Lewis

2          Johnson states in conclusory fashion that Lewis sent him to the hole with knowledge that

3 he had PTSD. ECF No. 69-3 at 122.  Johnson does not state the basis for his statement that Lewis

4 knew about his mental illness.  Johnson does not point to evidence that he told Lewis of his

5 mental condition or that Lewis knew that disciplinary segregation would exacerbate his mental

6 condition.  To the contrary, Johnson's contemporaneous complaints appeared to be that Lewis

7 did not inquire into Johnson's mental health prior to sentencing him. *See* ECF No. 69-1 at 39, 49,

8 58, 61.[4]  There is no evidence that Lewis received or responded to any of Johnson's requests to

9 reduce his disciplinary segregation time or to provide him with a television.  Because there is no

10 evidence that Lewis knew of and disregarded a serious risk to Johnson's health or safety, I grant

11 the defendants' motion on Johnson's conditions of confinement claim against Lewis.

12                  4.  Dreesen

13          As discussed above, Dreesen responded to Johnson's request by directing he be seen by

14 mental health staff, and mental health staff visited Johnson that same day.  There is no evidence

15 Johnson thereafter complained to Dreesen.  Because Dreesen reasonably responded to Johnson's

16 request by having him visited by mental health staff, no reasonable jury could find Dreesen was

17 deliberately indifferent to Johnson's conditions of confinement.  I therefore grant the defendants'

18 motion on Johnson's conditions of confinement claim against Dreesen.

19 ////

20 ////

21 ////

22

23 _____

[4] The disciplinary hearing records state that "[m]ental [h]ealth status was checked prior to any segregation sanction imposed." ECF No. 69-3 at 56, 67, 79.  Other than these notations, there is no evidence what information about Johnson's mental health was conveyed to Lewis.

### D. Doe Defendants and Defendant Adams

Johnson named several Doe defendants and a defendant named Adams, but he never identified or served any of them.  I therefore dismiss Johnson's claims against them without prejudice for failure to timely serve.

## II. CONCLUSION

I THEREFORE ORDER that plaintiff Lausteveion Johnson's claims against the Doe defendants and defendant Adams are DISMISSED without prejudice for failure to timely serve.

I FURTHER ORDER that plaintiff Lausteveion Johnson's motion for oral argument **(ECF No. 72) is DENIED**.

I FURTHER ORDER that the defendants' motion for summary judgment **(ECF No. 61) is GRANTED in part** as set forth in this order.  The following claims remain pending for trial: (1) First Amendment retaliation and Eighth Amendment excessive force against defendant David Willis; (2) First Amendment retaliation against defendant Regina Barrett; (3) Eighth Amendment deliberate indifference to medical needs against defendants James Dzurenda and Jo Gentry; (4) Eighth Amendment conditions of confinement against defendants James Dzurenda and Jo Gentry.

DATED this 25th day of March, 2021.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE